UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN  DIVISION
NO: 4:08-CV-39-BR

| | | |
|---|---|---|
| WILLIAM J ANDERSON | ) | |
|             Plaintiff | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| E&J GREER, INC. | ) | |
|             Defendant | ) | |

This matter comes before the court on defendant's 31 March 2009 motion for summary judgment.  The motion is fully briefed and ripe for disposition.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked for defendant from 2002 to 2003 as a finance manager, and in August 2005, defendant (a car dealership) rehired him as a sales manager.  (Compl. ¶¶ 5-7; Pl. Dep. at 11, 24-27.) At the time he was hired, plaintiff was paid a weekly draw against commission and monthly commission of four percent of the gross monthly sales in the department.  (Compl. ¶ 8; Greer Dep. at 11-12; Greer Aff. ¶ 3.)  Defendant's president/owner, Elliot Greer, periodically reviews employee commission rates and adjusts them as he believes is warranted, a common practice among automobile dealerships.  (Greer Aff. ¶¶ 4-5; Pl. Dep. at 66-67.)  Of particular relevance to the instant case, Greer decreases managers' commission rates when the volume of inventory in their department increases.  (Greer Aff. ¶¶ 4-5.)

During the spring and summer of 2006, Greer and Jay Conway, defendant's General Manager, discussed reducing plaintiff's commission.  (Greer Dep. at 13-14; Greer Aff. ¶ 4; Conway Dep. at 66-68.)  Greer made the decision to adjust plaintiff's commission based on the store's volume and on some dissatisfaction with plaintiff's job performance, in particular with plaintiff's

lack of customer interaction.  (Greer Dep. at 18; Greer Aff. ¶ 6; Conway Aff. ¶ 3.)  Greer directed

Conway to inform plaintiff that his commission would be reduced, although Greer had not then

decided what plaintiff's new commission rate would be.  (Greer Dep. at 14-15; Greer Aff. ¶ 4;

Conway Dep. at 68; Conway Aff. ¶¶ 4-5.)

On 31 August 2006, plaintiff was involved in a serious automobile accident.  (Compl. ¶ 10.)

He was thrown from his motorcycle and suffered severe injuries.  (Id. ¶¶ 10-11.)  He was discharged

from the hospital on 1 November 2006 in a wheelchair, but by 14 November 2006, plaintiff had

regained a limited ability to walk with a walker.  (Id. ¶¶ 11-12.)  During the ten weeks that plaintiff

was out of work, defendant held his job open, paid plaintiff some salary and vacation pay,[1] including

his August commission, and the entire amount for his health insurance premium, including the

premium for his wife's coverage, which defendant did not typically pay on behalf of its employees.

(Greer Aff. ¶ 7; Greer Dep. at 12; Pl. Dep. at 45-48.)  Plaintiff's doctor released him to return to

sedentary work, and plaintiff returned to work at defendant on 14 November 2006.  (Conway Dep.

at 43; Deft. Exh. C at 2 (11/9/06 return to work slip).)  Despite his limited mobility, plaintiff "was

fully capable of performing his job duties as general sales manager."  (Compl. ¶ 13.)

In anticipation of plaintiff's return to work, Greer decided to reduce plaintiff's commission

from four percent to three percent.  (Greer Dep. at 14-15.)  Conway completed paperwork for the

office manager to make the reduction, and although the form Conway filled out contains a space for

the employee's signature, Conway did not have plaintiff sign the form because it is not his practice

to do so.  (Conway Dep. at 13; Deft. Exh. C at 1 (form indicating commission of three percent).)

The parties dispute whether Conway informed plaintiff of the reduction in commission: Conway

---

[1] Plaintiff denies being paid during his leave of absence.  (Pl. Dep. at 50.)

states that he did inform plaintiff generally of the likelihood of a reduction in the summer of 2006 before plaintiff's accident, and more specifically of the reduction to three percent in November 2006 as plaintiff was preparing to return to work; plaintiff says he did not know his commission was being reduced until he received his November commission check on 8 December 2006. (Conway Aff. ¶ 4; Pl. Aff. ¶ 5; Pl. Dep. at 49.)

On 8 December 2006, plaintiff received his commission check for November reflecting his reduced commission. (Pl. Dep. at 64-65.) Defendant contends that prior to receipt of the check, plaintiff had spent the day making telephone calls seeking other employment, and promptly resigned upon receipt of the check by packing up some things and telling Conway words to the effect of, "I'm out of here" and walking out. (Conway Dep. at 51-52; Congleton Aff. ¶ 2.) Plaintiff states that he had no idea that his commission was being reduced, and did not have any intention of resigning on 8 December 2006 until he asked Conway about the discrepancy, and, after consulting with Greer, Conway responded that plaintiff's commission had been reduced because he "was not 100 percent." (Pl. Dep. at 65-66; Pl. Aff. ¶¶ 5-6, 10.)

Plaintiff contacted the EEOC on 23 January 2007. (Pl. Exh. I (EEOC file) at 1.) Plaintiff completed an intake questionnaire, indicating his intent to complain of discrimination based on both age and disability. (Id. at 3.) On 24 April 2007, the EEOC mailed to plaintiff a completed Charge of Discrimination for plaintiff to sign which would then be sent to defendant. (Id. at 8.) The charge indicates plaintiff's complaint of discrimination based on disability, but not on age. (Id. at 9-10.) After completing its investigation, the EEOC mailed plaintiff a right to sue letter on 23 October 2007. (Id. at 11.) Plaintiff filed the instant action on 10 March 2008, alleging claims of discrimination in violation of the Age Discrimination in Employment Act (the "ADEA") and the

Americans with Disabilities Act (the "ADA").[2]

## II.  DISCUSSION

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate in those cases in which there is no genuine dispute as to a material fact, and in which it appears that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Haavistola v. Community Fire Co. of Rising Sun, Inc.</u>, 6 F.3d 211, 214 (4th Cir. 1993).  Summary judgment should be granted in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law."  <u>Id.</u>  In making this determination, the court draws all permissible inferences from the underlying facts in the light most favorable to the party opposing the motion.  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate ."  <u>Teamsters Joint Council No. 83 v. Centra, Inc.</u>, 947 F.2d 115, 119 (4th Cir. 1991).

A plaintiff may establish a claim of discrimination or retaliation in one of two ways.  First, he may present direct or indirect evidence of the discriminatory animus alleged.  <u>See</u> <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 607 (4th Cir. 1999).  In order to defeat summary judgment, the plaintiff must demonstrate "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  <u>Fuller v. Phipps</u>, 67 F.3d 1137, 1142 (4th Cir. 1995).

If such evidence is not available to the plaintiff, he may rely on the burden-shifting scheme

---

[2] Plaintiff also alleged a claim of wrongful constructive discharge in violation of North Carolina public policy, but now concedes that summary judgment on that claim is appropriate, (Br. Opp. Mot. Summ. J. at 18), and therefore the court will not address this claim.

as articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). This scheme requires the plaintiff to establish a *prima facie* case of discriminatory action, which gives rise to a presumption of discrimination. <u>See id.</u> at 802. Establishment of this presumption then shifts the burden to the defendant to produce a legitimate, non-discriminatory reason for its action. <u>See id.</u> at 802-03. If defendant meets this burden of production, the presumption of discrimination vanishes, and the plaintiff must show that the employer's proffered explanation is simply a pretext for intentional discrimination. <u>See</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147 (2000). "An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination" or fails to show that the employer's proffered legitimate nondiscriminatory reason is unworthy of belief. <u>Henson v. Ligget Group, Inc.</u>, 61 F.3d 270, 274 (4th Cir. 1995); <u>see also</u> <u>Reeves</u>, 530 U.S. at 143. If "no rational fact-finder could conclude that the action was discriminatory," the plaintiff cannot withstand the defendant's motion for summary judgment. <u>Reeves</u>, 530 U.S. at 148.

B.     <u>ADEA Claim</u>

The ADEA prohibits employers from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). Defendant contends that plaintiff's ADEA claim must fail because plaintiff has failed to exhaust his administrative remedies concerning the ADEA claim, and as a result this court lacks subject matter jurisdiction as to that claim. (Br. Supp. Mot. Summ. J. at 29.)

The scope of a plaintiff's right to file a federal lawsuit under Title VII, the ADA, or the ADEA is determined by the contents of the EEOC charge. <u>See</u> <u>Jones v. Calvert Group, Ltd.</u>, 551

5

F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Id. (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). Thus, a claim will generally be barred if the EEOC charge alleges discrimination on one basis such as race, and the litigation claim alleges discrimination on another basis, such as sex. See id. (discussing Title VII). A failure by the plaintiff to exhaust administrative remedies concerning a claim deprives a federal court of subject matter jurisdiction over the claim. Id.

In the present case, plaintiff filled out an EEOC intake questionnaire and checked both the "Age" and "Disability" boxes as the bases for his claim of employment discrimination. However, when the EEOC drafted the charge of discrimination, it did not include an age-based discrimination claim. The section of the charge describing the "[p]articulars" of the case states that plaintiff believes he was discriminated against in violation of the ADA. Plaintiff relies on the checked "ADEA" box on the intake questionnaire as sufficient to raise the ADEA claim and contends that failure to "check[] the age box" is an error attributable to the EEOC and does not waive his right to sue under the ADEA. (Br. Opp. Mot. Summ. J. at 17.)

The court notes that, in his own description of his discrimination claim(s) on the intake questionnaire, plaintiff makes no further mention of any discrimination claim based on age. Right under the checked boxes, in the space provided for describing discriminatory conduct, plaintiff wrote that his wages were unilaterally cut "because of disability." (Pl. Exh. I at 3.) Throughout the intake questionnaire, plaintiff – assisted by counsel in completing the questionnaire – describes the reasons for his wage reduction as occurring after and because of "his disability." (Id. at 5, 7.) Notably, in

6

the "Supplemental Answers" that plaintiff attached to the intake questionnaire, the only mention of age occurs at the very beginning, describing plaintiff as "a 53 year old white male." (Id. at 6.) The rest of the narrative describes plaintiff's physical injuries and resulting disability, and attributes the salary cut solely to plaintiff's disability. (Id.) The court concludes that plaintiff did not make a claim of age discrimination with the EEOC, and therefore that claim must be dismissed for lack of subject matter jurisdiction. See Hardin v. Belmont Textile Mach., Co., No. 3:05-CV-492, 2008 WL 3925073, *5 (W.D.N.C. Aug. 20, 2008) (dismissing a claim "under the ADA because [the plaintiff] did not allege disability discrimination on his EEOC charge, despite the fact that he completed an intake questionnaire that explored the prospect of a disability claim"); Watkins v. Milliken & Co., 613 F. Supp. 408, 417 (W.D.N.C. 1984) (dismissing Title VII national origin claims for failure to exhaust administrative remedies because "while [p]laintiffs did make some references to [national origin discrimination] in [d]efendant's work place [during the EEOC intake interview], they all consistently identified their age as being the cause of their discharges. Each [p]laintiff freely signed charges alleging only age discrimination after being specifically invited by the EEOC representative to make any additions or changes to the charges drafted by EEOC. Plaintiffs neither made nor attempted to make any such changes; nor, apparently, did any [p]laintiff ever voice any objection to the contents or scope of their charges until after [d]efendant had filed and served its motion to dismiss.").

C.    ADA Claim

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual . . . ." 42 U.S.C. § 12112(a). To establish a claim for constructive discharge in violation of the ADA,

> a plaintiff establishes a *prima facie* case if he demonstrates that (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, 53 F.3d 55, 58 (4th Cir. 1995).

Haulbrook v. Michelin North America, 252 F.3d 696, 702 (4th Cir. 2001).

"To prove constructive discharge, a plaintiff must at the outset show that his employer 'deliberately made [his] working conditions intolerable in an effort to induce [him] to quit.'"  Heiko v. Colombo Savings Bank, 434 F.3d 249, 262 (4th Cir. 2006) (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 272 (4th Cir. 2001)).  "Plaintiff must therefore demonstrate: (1) that the employer's actions were deliberate, and (2) that working conditions were intolerable."  Id.  Whether working conditions are intolerable is assessed objectively, from the perspective of a reasonable person.  See Williams v. Giant Food Inc., 370 F.3d 423, 434 (4th Cir. 2004).  "Because the claim of constructive discharge is so open to abuse by those who leave employment of their own accord, this Circuit has insisted that it be carefully cabined."  Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 187 (4th Cir. 2004) (citations omitted).

1. *Whether Plaintiff is Disabled*

Defendant contends that plaintiff fails to establish the first element of the *prima facie* case because his injuries constituted a "temporary impairment"[3] and thus did not rise to the level required under the ADA of "substantially limiting" a major life activity.  (Br. Supp. Mot. Summ. J. at 16.)

---

[3]In support of its argument that plaintiff's injuries were temporary, defendant notes that plaintiff has "continued to regain the use of his leg after he left the Defendant's employ."  (Br. Supp. Mot. Summ. J. at 17.)  This is irrelevant, however, as "the time period relevant to [plaintiff']s ADA claim is the time during which he was employed [by defendant] and in which he alleges it . . . discriminated against him based on his disability."  Parkinson v. Anne Arundel Med. Ctr., Inc., 214 F. Supp. 2d 511, 513 n.4 (D. Md. 2002) (excluding consideration of the plaintiff's further deterioration after leaving employment).

The ADA provides that an individual has a disability if he suffers from

> a physical or mental impairment that substantially limits one or more of [his] major life activities . . . . [Plaintiff] is thus required to make a three-part showing. He must prove (1) that he has a physical or mental impairment, (2) that this impairment implicates at least one major life activity, and (3) that the limitation is substantial.

Heiko, 434 F.3d at 254 (citing Toyota Motor Mfg., Ky., Inc., v. Williams, 534 U.S. 184, 194-95 (2002)).

A limitation is "substantial" if it is "considerable or to a large degree." Id. at 256. Thus, the ADA does not cover impairments "whose effects on a major life activity rise only to the level of a 'mere difference' with the abilities of an average individual." Id. (citing Albertson's, Inc., v. Kirkingburg, 527 U.S. 555, 565 (1999)). In determining whether an impairment is substantially limiting, a court may consider the duration or expected duration of the impairment and the permanent or long term impact of the impairment. See Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 468-69 (4th Cir. 2002). "These factors indicate that a temporary impairment, such as recuperation from surgery, will generally not qualify as a disability under the ADA." Id. (citing 29 C.F.R. § 1630.2(j)). While the presumption exists that temporary impairments do not qualify as disabilities under the ADA, temporary impairments require a case-by-case evaluation. Id. at 469. A temporary impairment could be so severe or have a duration so long that to classify it as "temporary" would be improper. Id.

In Pollard, 281 F.3d at 472, upon which defendant relies, the Fourth Circuit found that recuperation from an infection after the plaintiff's back surgery was a temporary impairment that did not qualify as a substantially limiting disability under the ADA. Pollard, however, is distinguishable from the instant case. The Fourth Circuit found no evidence that the plaintiff's injury in Pollard was expected to be permanent or long term; in fact, the plaintiff's condition was

9

considered temporary and there was no evidence that she would not make a full recovery. Id. at 470. Furthermore, the restrictions that the plaintiff's doctor gave her upon returning to work were fairly limited in scope; she could not lift a certain amount or bend repetitively. Id.

In the present case, when plaintiff was discharged from the hospital he could not walk without the assistance of a walker. (Reiter Aff. ¶ 3; Pl. Aff. ¶ 7.) The interpretative guidance for the ADA notes that an impairment is substantially limiting if it "significantly restricts the duration, manner or condition under which an individual can perform a particular major life activity as compared to the average person in the general population's ability to perform that same major life activity." 29 C.F.R. app. § 1630.2. The example given in the guidance is particularly pertinent: "Thus, for example, an individual who, because of an impairment, can only walk for very brief period of time would be substantially limited in the major life activity of walking." Id. In the present case, plaintiff was not hospitalized for a minor or routine injury; he suffered "severe medical complications" due to a motorcycle accident. (Pl. Exh. C (hospital discharge summary) at 1.) Plaintiff lapsed into a coma in addition to suffering numerous injuries all over his body. (Id.) Upon returning to work plaintiff was unable to walk without the assistance of a walker and was in severe pain. (Id.) Defendant's extremely limited observation that plaintiff walked unassisted "on occasion" when he returned to work, (Greer Aff. ¶ 8), is insufficient evidence to find as a matter of law that plaintiff's impairments were not substantial, in contravention of the evidence submitted by plaintiff on the issue. Accordingly, the court concludes that plaintiff's injury was not a "temporary impairment" under the ADA.

2. *Constructive Discharge*

In the alternative, defendant contends that plaintiff "cannot establish that he was in fact constructively discharged[.]" (Br. Supp. Mot. Summ. J. at 21.) The court agrees. Taking the facts as plaintiff contends them to be – that he did not know of defendant's intention to decrease his commission rate, that he did not seek other work prior to receiving his November 2006 commission check reflecting the reduced commission rate, and that Conway told plaintiff his commission had been reduced[4] because he was "not 100 percent" – the court cannot say that plaintiff's working conditions had become so objectively intolerable so as to cause a reasonable person in plaintiff's position to resign from employment. Defendant took no action against plaintiff which could be construed in any way as "essentially a career-ending action or a harbinger of dismissal." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994); see also Alba v. Merrill Lynch & Co., 198 Fed. Appx. 288, 294 (4th Cir. 2006) (granting summary judgment on ADEA constructive discharge claim because employer's actions in forcing the plaintiff's son to resign, threatening the plaintiff with loss of certain "benefits if he refused to retire, . . . telling some of [the plaintiff']s colleagues that his employment would be terminated long before he ultimately left, and . . . disconnecting [the plaintiff']s access to [the employer]'s computer system" were not so objectively intolerable as to compel a reasonable person to resign); cf. Reed v. Airtran Airways, 531 F. Supp. 2d 660, 667 (D. Md. 2008) (finding sufficient evidence of an objectively intolerable workplace where the plaintiff alleged "several incidents of workplace verbal and physical abuse," humiliation of plaintiff "in front of other employees and customers, . . . a threatening phone call . . . telling [the plaintiff] that 'if she came back to work she was dead' and three incidents of graffiti on her car and front door," but

---

[4] While plaintiff repeatedly characterizes the reduction as a twenty-five percent reduction in pay, because plaintiff was paid based on sales, rather than a regular salary, the reduction in his commission rate cannot be so clearly calculated, and by plaintiff's own evidence, sales had increased since his return to work.

11

finding insufficient evidence of a nexus between the conduct and a discriminatory intent).

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is ALLOWED, and this action is DISMISSED.

This 5 November 2009.

_____
W. Earl Britt
Senior U.S. District Judge